UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **JOHN PELZ,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 5:22-cv-1605-LCB |
| ) | |
| **CITY OF HUNTSVILLE,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

John Pelz filed a complaint on December 22, 2022, alleging that his employer, the City of Huntsville, unlawfully discriminated against him due to his disability and his race. (Doc. 1). Pelz also alleged that the City retaliated against him because of prior complaints he made against the City, including several Equal Employment Opportunity Commission ("EEOC") charges and another lawsuit, which was filed in 2019 but dismissed at the summary judgment stage on September 20, 2023, by United States District Judge Madeline Haikala. *Pelz v. City of Huntsville*, No. 5:19-CV-01587-MHH, 2023 WL 7211774 (N.D. Ala. Sept. 20, 2023) (finding, among other things, no genuine issue of material fact as to whether the City failed to accommodate Pelz's disability). The City moved to dismiss the present complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Doc. 5) and filed a brief in support of its position. (Doc. 6). The motion to dismiss has been fully briefed, and the case is ripe

for decision. For the following reasons, the Court finds that the motion to dismiss is due to be granted in part and denied in part.

## I. Jurisdiction & Venue

Pelz filed his complaint pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and the ADA Amendments Act of 2008 ("ADAAA"). Accordingly, subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331. Venue is proper in this Court because the parties reside in Huntsville, Alabama, and the events described in Pelz's complaint took place in Huntsville, which is in the Northeastern Division of the United States District Court for the Northern District of Alabama. *See* 28 U. S.C. § 1391(b).

## II. Legal Standards

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts pled must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard requires a complaint to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although

2

"[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557.

To properly consider a Rule 12(b)(6) motion to dismiss, a court must "(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense ... to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 556, 570. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. International Univ.*, 495 F. 3d 1289, 1295 (11th Cir. 2007).

3

### III. Background

The following summary is taken from Pelz's complaint. The well-pleaded facts are assumed to be true for purposes of this motion. According to Pelz, he began working for the City's Public Works Services Sanitation Department in 2007 as "a regular, full-time Equipment Operator III." (Doc. 1 at 3). In June of 2013, Pelz began receiving "medical treatment for his medical impairments … for ongoing medical issues caused by the nature of his work in Sanitation." *Id.* According to Pelz, the City is aware of his disability, perceives him to have a disability, and has a record of his disability.[1]

On December 18, 2020, the City posted a job opening for a Sanitation Forman position. Pelz applied for the job and was interviewed in January of 2021. However, the City did not select Pelz for the position and instead gave it to another applicant. Pelz is Caucasian, and the applicant who was hired is African American. Pelz also asserts that the supervisor who interviewed him is African American. Pelz also alleged that the individual hired for the position was not disabled. According to

---

[1] Although Pelz does not specifically identify his disability in the present case, the undisputed facts in his prior lawsuit demonstrate that the City was aware of and at least attempted to accommodate Pelz's osteoarthritis and carpel tunnel syndrome. In that case, Pelz also alleged that the City discriminated against him on the basis of his disability, albeit in a separate incident. *Pelz v. City of Huntsville*, No. 5:19-CV-01587-MHH, 2023 WL 7211774 (N.D. Ala. Sept. 20, 2023). The Court hereby takes judicial notice of that case. *See McCone v. Thorpe*, 828 F. App'x 697, 698 (11th Cir. 2020) (citing Fed. R. Evid. 201(b); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278-80 (11th Cir. 1999)) ("A district court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment.").

Pelz, the City discriminated against him on the basis of his disability (Count I) and his race (Count II) in violation of federal law.

Pelz further stated that he "met the qualifications for the job and had more experience working in the Sanitation Division than any of the other applicants for the position." (Doc. 1 at 4). Pelz thus concluded that, had an impartial decision been made, "he was the reasonable choice," and the City's failure to give him the job was based on his race and/or his disability. *Id*. Pelz also alleged in Count III of his complaint that he was passed over for the job in retaliation for his prior internal complaints[2], his prior administrative complaints with the EEOC, and the above-mentioned lawsuit. He also claimed that, prior to his interview, he had "been told by supervisors, customer service representatives, and even a janitor, that the decision had already been made as to who was going to be chosen for the Sanitation Forman position for which [he] had applied." (Doc. 1 at 4). When the decision was announced, Pelz said, it confirmed what he had been told.

### IV.   The City's Motion to Dismiss

As noted, the City has moved to dismiss all three counts of Pelz's complaint pursuant to Fed. R. Civ. P. 12(b)(6). According to the City, Pelz has failed to state a claim for which relief can be granted. The City argues that Pelz's complaint is

---

[2] Pelz does not identify the dates of these internal complaints, nor does he state their nature.

replete with conclusory allegations and lacks the required factual support to survive a motion to dismiss. The Court agrees in part and disagrees in part.

### A. Pelz's disability discrimination claim meets the minimum pleading requirements.

The ADA mandates that employers not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA's provisions also prohibit an employer from discriminating against an employee "because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). To establish a prima facie case of disparate treatment under the ADA, which is what Pelz has alleged, he must ultimately prove the following: (1) that he is disabled; (2) that he is qualified for the position sought; and (3) that his employer subjected him to unlawful discrimination because of his disability." See *Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1445 (11th Cir.1998); *see also Morisky v. Broward County*, 80 F.3d 445, 447-49 (11th Cir.1996). Claims such as Pelz's are plausibly stated "when there is a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017) (citing *Iqbal*, 556 U.S. 662 at 678.). However, a plaintiff "need not allege facts sufficient to make out

6

a classic prima facie case but must simply provide enough factual matter to plausibly suggest intentional discrimination." *Id.* (citing *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015)).

As to the first element, the Court finds that Pelz has adequately alleged that he is disabled. Although Pelz does not specifically identify his disability in the complaint, the Court has taken judicial notice of the record from Pelz's prior proceeding before Judge Haikala. That record, along with the EEOC complaints attached to both Pelz's complaint and the City's motion to dismiss, allows the Court to plausibly infer that Pelz has a disability and that the City was aware of it. For its part, the City does not appear to dispute this element.

The closer call here is the second element: whether Pelz adequately alleged that he was qualified for the job he says was wrongfully withheld from him. The City is correct that Pelz's complaint is replete with conclusory language, most of which simply tracks the relevant statutory language or makes sweeping generalizations. For example, Pelz alleged that he "was significantly more qualified than the applicant chosen for the position such that, had an impartial decision been made, he was the reasonable choice." (Doc. 1 at 5). The Court gives that conclusion no presumption of truth because Pelz has not supported it with a single fact alleging any of the relevant qualifications or how the City considers those qualifications in its decision-making process. However, when the complaint is stripped of its

7

conclusory language, the following relevant facts remain: (1) Pelz has worked for the City since August of 2007; (2) he applied for the sanitation foreman position when it was announced in December 2020; (3) in January 2021, he was interviewed for the job; (4) he was not selected for the job; (5) Pelz had more experience that any of the other applicants, including the person selected; and (6) the person selected was not disabled.

Given those allegations, the Court finds it plausible to infer that, had Pelz not met at least the minimum qualifications for the job, he would not have been interviewed. The Court further infers that seniority, which he sufficiently alleged, played at least some role in the City's hiring decision. Therefore, Pelz's allegation that he had "more experience working in the sanitation division than any other applicant[,]" including the applicant who was hired, could plausibly suggest that Pelz was qualified for the job.

The City is correct in noting that Pelz did not lay out any of the requirements of the position for which he interviewed, such as requisite training, seniority, or otherwise. However, when the facts noted above are taken to be true and viewed in the light most favorable to Pelz, the Court infers that seniority played some role in the City's hiring decision. And because seniority could play a role in the hiring decision, Pelz's allegation that he had worked for the City longer than any other applicant nudges him across the goal line.

Of course, the City may have a policy of interviewing everyone who applies for such a position, and it may have numerous valid reasons for which it made the hiring decision. Additionally, the City could give little weight to seniority and more weight to the type of experience the applicant has. But questions like that are more appropriately resolved at trial or in a motion for summary judgment. Given the allegations above, the Court finds that Pelz has just cleared the hurdle of pleading that he was qualified for the position.

The Court also finds it *plausible* that the City did not hire Pelz because of his disability. Again, Pelz has not provided many specific facts. However, the following facts can be distilled from Pelz's complaint: (1) he is disabled; (2) the City knew he was disabled and in fact had been involved in litigation with Pelz over an accommodation for that disability; and (3) the individual hired for the position was not disabled and had less experience than Pelz. To be sure, Pelz has more work to do at trial or at the summary judgment stage. But at this point in the proceedings, the Court finds that Pelz has met the minimum standard when the above-noted facts are viewed in the light most favorable to him.

**B. Pelz failed to adequately plead a race-discrimination claim.**

Pelz's claim of racial discrimination is analyzed in a similar fashion. As to whether he was qualified for the job, the same analysis applies and will again narrowly carry the day for Pelz at this stage of the proceedings. However, Pelz must

9

also adequately allege the third element, i.e., that he was not selected for the promotion based on his race.  In addition to the conclusory allegations regarding his own qualifications, Pelz alleged the following facts: (1) that he was Caucasian; (2) that the person who interviewed him was African American; (3) that the person ultimately hired was African American; and (4) that on at least two occasions in 2021, the City hired an African American applicant over a Caucasian applicant. Although Pelz alleges that the Caucasian candidates were "more qualified" than the African American candidates, the Court finds that language to be conclusory.[3] Additionally, Pelz did not include any factual detail about the circumstances of those decisions.  For example, he did not allege that the City even interviewed both candidates.  Therefore, the Court cannot make the same inference it did in analyzing Count I, *i.e.*, that because they were interviewed, they must have met the qualifications for the job.  The mere fact that an African American person was hired over a Caucasian person is of no consequence standing alone.  Other than Pelz's mere assertion that he belonged to a different race than that of the chosen applicant, the complaint is devoid of anything suggesting racial animus on the part of the City. The Court also notes that race was not an issue in any of Pelz's prior EEOC charges

---

[3] The Court discerns a difference between an allegation that someone was "more qualified" versus an allegation that someone was "more experienced."  The latter allows an objective inference that the plaintiff has worked for the employer, or in a particular position with that employer, for a longer period of time than a comparator.  Whether an applicant is qualified may include the applicant's experience; however, it is more subjective and, standing alone, is inadequate.

or his prior lawsuit. Accordingly, Pelz's race-discrimination claim is due to be dismissed for failure to state a claim for which relief can be granted.

### C. Pelz failed to adequately plead a retaliation claim.

Finally, Pelz alleged that the City's decision not to hire him was in retaliation for his prior complaints about various employment practices and his above-mentioned lawsuit. For the reasons described above, the Court finds that Pelz has adequately pleaded that he was at least minimally qualified for the job and that he has worked for the City for a longer period of time that any of the other applicants. Pelz has also adequately alleged two of the required elements for a retaliation claim: (1) that he engaged in a statutorily protected activity; and (2) that he suffered a materially adverse employment action. *See Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). In his complaint, Pelz alleged that he engaged in several instances of protected activity by filing EEOC charges against the City and for filing and maintaining—at the time the present complaint was filed—another lawsuit against the City. Pelz also alleged that he was not selected for a promotion, which is sufficient to plead an adverse employment action. *Blue v. Dunn Const. Co.*, 453 F. App'x 881, 884 (11th Cir. 2011), quoting *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) ("adverse employment action" includes "termination, failure to hire, or demotion.").

However, Pelz must also satisfy a third element: that the adverse action was causally related to the protected activity. *See Gogel*, 967 F.3d at 1134. Said another way, Pelz must ultimately prove that "the desire to retaliate was the but-for cause of the challenged employment action[s]." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 3352 (2013). The City correctly notes that a plaintiff can meet this element "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). In the absence of other causal evidence, however, the requisite temporal connection must be "'very close.'" *Id.* (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Moreover, "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. Bellsouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

A review of Pelz's complaint reveals no allegations which, if true, would establish the "other causal evidence" noted above. As detailed above, Pelz alleged that he filed several complaints against the City with the EEOC, which resulted in a lawsuit that was pending at the time this lawsuit was filed. However, the only other allegation regarding retaliation is in paragraph 25 of the complaint in which Pelz makes the conclusory allegation that the City "retaliated against [him] because of his prior internal complaints with the City, his administrative complaints with the

EEOC, and filing of a formal lawsuit, alleging discrimination and for opposing discrimination." Thus, Pelz must rely on temporal proximity to establish this element.[4]

As noted, in the absence of other allegations about causation, a plaintiff must show that his protected activity was "very close" to the adverse employment action. *Thomas*, 506 F.3d at 1364. The City cites several cases in which courts have found gaps as short as two months to be too long to satisfy the temporal proximity element. (Doc. 6 at 13), citing *Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 229-30 (11th Cir. 2011) (finding a two-month gap not close enough). The City then points to Pelz's first EEOC complaint—the one he filed on July 19, 2017—and uses that date as the starting point for the temporal proximity analysis. Clearly, if the 2017 complaint starts the clock, the City's decision not to hire Pelz after his interview in January 2021 would be too remote in time from his protected activity to allow an inference of causation.

In his response, Pelz almost concedes the City's position by asserting that "[n]ot all courts have accepted that when more than one charge of discrimination is

---

[4] In his response, Pelz argued that he did allege other facts that would satisfy the causation element. Specifically, he points to the allegation that other employees told him before his interview that a decision had already been made, and that those rumors were confirmed when the successful applicant was chosen. Setting aside the obvious hearsay issues with that allegation, the Court does not see how it would establish causation. Pelz did not allege that people told him the decision had been made because of Pelz's protected activity. Even accepting that allegation as true, and assuming it could be reduced to admissible evidence at trial, the Court does not see how those statements could be evidence of retaliation.

filed, alleged retaliation occurring after a subsequent charge relates back to [the] earliest charge." (Doc. 11 at 5), citing *Rouse v. Fanning*, Case No. 5:13-CV-261, M.D. Ga, Nov. 02, 2015.  In *Rouse*, the plaintiff had filed six EEOC charges against his employer between 2006 and 2010.  Like Pelz, that plaintiff was relying on temporal proximity to establish the causation element.  Also like Pelz, the plaintiff in *Rouse* had EEOC charges and a separate lawsuit pending at the time of the adverse employment action.  However, the district court held that the pendency of those matters was "of no consequence" and that "[t]emporal proximity is measured 'between the time [the] employer learned about [the] protected activity' and the time the adverse action was taken."  *Id.* (quoting *Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 823 (11th Cir. 2008)).  That court then used the plaintiff's "most recent complaint" as the starting point for its temporal proximity analysis.

Even if this Court were to use Pelz's most recent EEOC charge as the starting point, it would not help him.  The most recent EEOC charge Pelz filed before the City made its hiring decision was on September 8, 2020.  As noted, Pelz alleged he was interviewed in "January 2021."  In the light most favorable to him, the Court could assume that he was interviewed on New Years Day of 2021, and that the City made its decision as he was leaving the interview room.[5]  But even then, there is

---

[5] Of course, it's not likely the City interviewed him on a holiday, and the dearth of factual allegations on this issue leave the Court to speculate as to when the hiring decision was made or even when it was announced.  But even if the Court considered the hearsay statements mentioned

14

more than a three-month gap between Pelz's last complaint and the adverse action. As noted above, that is too long to help him meet the causation element.

The City cites two cases in its reply for the proposition that the temporal proximity benchmark should be the date Pelz filed his very first EEOC complaint in 2017. It cites, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) and *Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 823 (11th Cir. 2008). However, it is not clear from a reading of those opinions that the employees had filed multiple complaints like Pelz. In *Clark County*, the relevant question was whether the clock began to run from the date the EEOC charge was filed or the date the right-to-sue letter was issued. While both cases have language suggesting that the starting point should be the date on which the employer first learned of the protected activity, it is not clear that there were multiple charges in those cases. Thus, those cases do not answer the question of whether an employer's notice relates back to the first charge of discrimination in cases where an employee files multiple charges over a long period of time. However, as described above, Pelz's claim fails even using his preferred answer to that question. Thus, the Court need not resolve it to decide this case.

---

above, Pelz did not allege when those statements were made to him, and the statements themselves only indicated that a hiring decision had been made before Pelz's interview. No timeframe was alleged.

Because Pelz has failed to adequately plead a required element of his retaliation claim, the City's motion to dismiss Count III is due to be granted.

## V. Conclusion

For the foregoing reasons, the City's motion to dismiss (Doc. 5) is **GRANTED IN PART AND DENIED IN PART**. The motion is denied as to Count I and granted as to Counts II and III. Counts II and III are hereby **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted.

**DONE** and **ORDERED** February 2, 2024.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE